## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EDWIN MURRAY, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 21-CV-11598 |
| v. | **Class Action Complaint** |
| KONINKLIJKE PHILIPS N.V., a foreign corporation, PHILIPS NORTH AMERICA LLC, a Delaware Corporation, and PHILIPS RS NORTH AMERICA LLC, a Delaware corporation, | **LEAD RELATED CASE: No. 21-cv-11017** |
| | **Jury Trial Demanded** |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Edwin Murray ("Plaintiff" or "Mr. Murray"), by and through his undersigned counsel, brings this Complaint on behalf of himself and all others similarly situated for damages, declaratory relief, and punitive damages against Defendants Koninklijke Philips N.V. ("Royal Philips"), Philips North America LLC ("Philips NA"), and Philips RS North America LLC ("Philips RS") (collectively "Philips" or "Defendants"), and alleges as follows:

## I.    NATURE OF THE ACTION

1.    Sleep apnea is a common, but dangerous, medical condition that affects an estimated 24 million people in the United States.  Sleep apnea occurs when an obstruction in a person's airway causes them to stop breathing for a brief period while sleeping.

2.    Respiratory failure is another common, but serious, medical condition that occurs when a person's blood contains too little oxygen.  The condition has several underlying medical causes, one of the most prevalent of which is the ongoing COVID-19 pandemic.

1

3.      Defendants Koninklijke Philips N.V., Philips North America LLC, and Philips RS North America LLC are among the leading manufacturers and sellers of Continuous Positive Airway Pressure ("CPAP") and Bilevel Positive Airway Pressure ("BiPAP") machines, which are commonly used to treat sleep apnea, and ventilators which are used to treat respiratory failure. In fact, Koninklijke Philips N.V.'s CEO describes Philips as "the market leader in sleep apnea" and "sleep app devices."[1]

4.       These devices are used to express air into patients' airways. Without access to these devices, some patients may experience severe adverse health consequences, including heart attack, stroke, brain damage, and death by asphyxiation.

5.      On April 26, 2021, Philips issued a public warning regarding potential health risks associated with polyester-based polyurethane ("PE-PUR") sound abatement foam that was used in certain of Philips CPAP devices, BiPAP devices, and ventilators. Philips did not issue a recall of these devices at this time.

6.      On June 14, 2021, Philips announced a recall of fourteen models of its CPAP and BiPAP machines and ventilators (the "Defective Breathing Devices") that were manufactured between 2012 and June 2021 due to the presence of PE-PUR foam.

7.      The models subject to the recall include: E30; DreamStation ASV; DreamStation ST, AVAPS; SystemOne ASV4; C Series ASV, S/T, AVAPS; OmniLab Asvanced Plus; SystemOne (Q Series); DreamStation CPAP, Auto CPAP, BiPAP; Dream Station Go CPAP, APAP; Dorma 400, 500 CPAP; REMStar SE Auto CPAP; Trilogy 100 and 200; Garbin Plus,

---

[1] https://www.fool.com/earnings/call-transcripts/2021/04/26/koninklijke-philips-nv-phg-q1-2021-earnings-call-t/ (last visited Sept. 24, 2021).

Aeris, LifeVent; A-Series BiPAP Hybrid A30; A-Series BiPAP V30 Auto; A-Series BiPAP A40; and A-Series BiPAP A30.

8.      According to the recall notice, the PE-PUR foam may degrade and cause particles to enter users' airways and also may emit toxic chemicals that are linked to a variety of adverse health consequences, including organ failure and cancer.  Philips admits that the risks associated with the PE-PUR foam could result in "serious injury which can be life-threatening or cause permanent impairment."

9.      Polyester polyurethane is vulnerable to degradation from heat, oxygen, sunlight, moisture, microbial, and fungal attack.  This includes the high humidity, elevated temperature (approximately 95-110 °F), with the presence of bacteria and potential fungal growth environment in which Philips' ventilators and CPAP/BiPAP machines are used.  The properties of polyester polyurethanes are well known and have been studied in scientific literature for many years—well before Philips started manufacturing the Defective Breathing Devices.

10.      By choosing polyester polyurethane for use in the Defective Breathing Devices despite the fact that the risks associated with using such material were well known prior to the manufacture of the Defective Breathing Devices and safer alternatives were available, Defendants breached the relevant standard of care.

11.      Defendants defrauded Plaintiff and Class Members at the time and place of sale by failing to disclose the risk of harm, which was known or should have been known before the Defective Breathing Devices were sold.

12.      For several years, consumers who have used the Defective Breathing Devices have complained about black particles coming from their machines.  It is now known that those particles are coming from the degradation of the PE-PUR foam.  Despite the presence of these complaints

in public forums for years, Philips did not warn the public or its customers about the hazards associated with the Defective Breathing Devices until late April 2021 and did not issue a recall of the Defective Breathing Machines until June 14, 2021.

13.     Philips deliberately planned the timing of the recall in order to maximize profits. On April 13, 2021, just prior to its initial April 26, 2021 warning about the dangers of PE-PUR foam, Philips announced the launch of its next generation "DreamStation 2" device, which purportedly does not contain PE-PUR foam.

## II.     PARTIES

14.     Plaintiff Edwin Murray is a citizen of the state of New York, residing in Niskayuna, New York.

15.     Defendant Koninklijke Philips N.V. ("Royal Philips") is a Dutch multinational corporation with its principal place of business in Amsterdam, Netherlands.

16.     Defendant Philips RS North America LLC ("Philips RS") is a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania.  Philips RS is a wholly owned subsidiary of Royal Philips. Prior to December 2020, Philips RS operated under the business name Respironics, Inc. ("Respironics").  Royal Philips acquired Respironics in December 2008.

17.     Defendant Philips North America LLC ("Philips NA") is a Delaware corporation with its principal place of business in Cambridge, Massachusetts.  Philips NA is a wholly owned subsidiary of Royal Philips.  On information and belief, Philips NA oversees all of Royal Philips' operations in the United States, including the operations of Philips RS.

## III.     JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because at least one member of the Class, as defined below, is a citizen of a different state different from that of Defendants, the proposed class consists

of more than 100 members, the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and none of the exceptions under 28 U.S.C. § 1332(d) apply to this action.

19.    This Court has personal jurisdiction over Defendants.  Defendant Philips NA maintains its headquarters in this district and Royal Philips conducts its operations in the United States, including the sale and distribution of the Defective Breathing Devices, through Philips NA. Defendants Philips NA and Philips RS are registered to conduct business in Massachusetts and in fact do conduct sufficient business in this district such that they have sufficient minimum contacts in Massachusetts, committed acts in furtherance of the allegations in this Complaint in Massachusetts, and/or otherwise purposefully availed themselves of the markets within Massachusetts through conducting such business in the state, such that the exercise of jurisdiction by this Court is proper.  The registered agent for Philips NA and Philips RS is Corporation Service Company 84 State St., Boston MA 02109.

20.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of events giving rise to Plaintiff's claims occurred in this District.  Specifically, Defendants have marketed, advertised, and sold the Defective Breathing Devices within this District.

## IV.    FACTUAL ALLEGATIONS

### A.    PLAINTIFF'S EXPERIENCE

21.    Plaintiff Edwin Murray suffers from atrial fibrillation and severe sleep apnea.

22.    In approximately 2014, he purchased a Remaster Pro manufactured by Defendants with the serial number P107339610061 to treat his condition.  Mr. Murray uses the device on a nightly basis and has been warned by his doctors that he would face catastrophic consequences should he discontinue its use.

23.     After learning of the recall, Mr. Murray attempted to use an older CPAP device that he used prior to 2014 until he could obtain a replacement device from Philips, but it was not effective.  As a result, he must continue to use the recalled device until he is able to obtain a prescription for a new device from his pulmonologist and obtain a new device.

24.     As a direct and proximate result of the use of his Defective Breathing Device, Mr. Murray has inhaled and/or ingested black particles that he recalls noticing in his mouth after use. He now realizes the black particles were the degraded and toxic PE-PUR foam, which he believes has entered his lungs and bloodstream.

25.     He has alerted his doctors of this exposure and is awaiting an appointment with his pulmonologist and necessary testing.

26.     Mr. Murray would not have purchased the Defective Breathing Device from Defendants had he known of the presence of the PE-PUR foam and the associated health risks.

27.     Mr. Murray promptly registered for the recall and was informed that Philips is not offering refunds, credits, or replacement devices at this time.

28.     He is unable to purchase another device without an updated prescription from his pulmonologist and, due to the increased pressures imposed by the ongoing Covid-19 pandemic, has been unable to get an appointment with his pulmonologist until mid-October.

29.     The fact that he must continue to use the Defective Breathing Device without knowing the deleterious health consequences he continues to be exposed to is a source of great distress to Mr. Murray and his wife.

30.     Philips has represented that it has already begun replacement of certain Defective Breathing Devices.  Mr. Murray and his wife have reached out to Philips on multiple occasions

about the replacement program, and have not received any response regarding how Philips will determine the priority for issuing replacement devices.

### B.  THE DEFECTIVE BREATHING DEVICES TREAT SERIOUS MEDICAL CONDITIONS

31.     It is estimated that approximately 24 million Americans suffer from obstructive sleep apnea, a dangerous and potentially life-threatening condition which causes a person to stop breathing for a period of time while sleeping.  Common side effects of sleep apnea include fatigue, daytime sleepiness, interrupted sleep, and snoring.  Serious cases can result in hypertension, heart attack, stroke, or brain damage.

32.     Millions of Americans rely on the use of continuous positive airway pressure ("CPAP") therapy to treat this condition.  CPAP therapy relies on a machine to deliver a flow of air through a mask placed over the nose or mouth, which increases air pressure in the user's throat so that the airway does not collapse during inhalation.

33.     Another common therapy used to treat sleep apnea is BiPAP therapy, which uses a machine to provide two different pressure settings, one for inhalation and one for exhalation.

34.     Many patients who use CPAP or BiPAP therapy must use the device every time they sleep, or face serious health consequences if therapy is discontinued or interrupted.

35.     Respiratory failure is another serious medical condition and occurs when a patient has difficulty breathing or getting enough oxygen into the bloodstream.  Respiratory failure can be caused by several underlying conditions, including COVID-19, physical trauma, sepsis, pneumonia, cardiac events, and drug abuse.  Respiratory failure, if untreated, can be fatal.

36.     Mechanical ventilators (typically known as "ventilators") are frequently used to treat respiratory failure by causing air to enter and exit the patient's lungs.  They also might be used during surgery or other medical procedures where necessary.

37.     The ongoing Covid-19 crisis has led to a significant increase in the demand for ventilators, often resulting in a shortage of available devices.

**C.  PHILIPS RECALLED THE DEFECTIVE BREATHING DEVICES DUE TO SERIOUS RISKS POSED BY THE PRESENCE OF PE-PUR FOAM**

38.     Philips is one of the leading manufacturers and sellers of CPAP machines, BiPAP machines, and ventilators.

39.     In its Annual Report for the year 2020, Sleep and Respiratory Care comprised 49% of Philips's total sales in its Connected Care line of business, which in turn made up 28% of Philips's overall sales of €19.535 billion.

40.     On June 30, 2021, the FDA announced that Philips had recalled fourteen models of CPAP and BiPAP machines manufactured between 2009 and April 26, 2021 due to potential health risks.

41.     Philips itself announced the recall on June 14, 2021, based on the discovery that polyester-based polyurethane (PE-PUR) sound abatement foam, which is used to reduce sound and vibration in the affected devices, may break down and potentially enter the device's air pathway.  When this occurs, black debris from the foam and chemicals released into the device's air pathway may be inhaled or swallowed by the person using the device.

42.     According to Philips, the potential health risks caused by the defective devices could be "life-threatening, cause permanent impairment, and/or require medical intervention to preclude permanent impairment."

43.     The possible health risks caused by particulate and chemical exposure from the recalled devices include asthma, skin and respiratory-tract irritation and toxic and carcinogenic effects to the kidneys and liver.

44.     In the June 14, 2021 recall notice, Philips admitted that the PE-PUR foam is present in "millions" of BiPAP, CPAP, and ventilator devices.

45.     The June 14, 2021 recall notice also indicated that the PE-PUR foam "may degrade into particles which may enter the device's air pathway and be ingested or inhaled by the user" and that the PE-PUR foam "may off-gas certain chemicals."

46.     Philips acknowledged that the PE-PUR defects identified in its recall notice "can result in serious injury which can be life-threatening, cause permanent impairment, and/or require medical intervention to preclude permanent impairment."

47.     In fact, Philips indicated that they had "received several complaints regarding the presence of black debris/particles within the airpath circuit" of the recalled Defective Breathing Machines, as well as reports of "headache, upper airway irritation, cough, chest pressure and sinus infection."

48.     Despite acknowledging the serious risks associated with the Defective Breathing Machines, Philips' recall notice instructed users to "not stop or alter your prescribed therapy until you have talked to your physician."

49.     However, because, as Philips acknowledged in the June 14, 2021 recall notice, "alternative ventilator options for therapy may not exist or may be severely limited," and thus consumers often have no choice but to continue using the Defective Breathing Machines.

50.     Although Philips provided a mechanism for users to register their Defective Breathing Machines with the Philips recall website, there is no corrective action available. Philips has not replaced Plaintiff or Class Members' Defective Breathing Machines, nor has it offered an available repair for the Defective Breathing Machines. As a result, Philips' recall offers no remedy.

51.    Consumers have expressed outrage at Philips' refusal to take action to replace or

repair the Defective Breathing Machines. For example:



*See* https://twitter.com/TheRScottWemple/status/1438180048700387335?s=20 (last visited Sept.

24, 2021).



**Wren**
@waywardbard

@Philips It's been 2 months w/o my CPAP and my sleep is suffering. What's the news on the replacement or repair program? This is ridiculous.

12:10 PM · Sep 3, 2021 · Twitter for Android

*See* https://twitter.com/waywardbard/status/1433839861111214080?s=20 (last visited Sept. 24, 2021).



**Barbara Gibson**
@Dontcallmebabs

@Philips I have severe sleep apnea and have one of the faulty CPAP machines. Who will be contacting me? What specifically is dangerous about the machine? When will a new part or new machine be sent to me? A year wait is unacceptable for a vital health product such as this

12:38 PM · Aug 22, 2021 · Twitter Web App

*See* https://twitter.com/Dontcallmebabs/status/1429498220527296513?s=20 (last visited Sept. 24, 2021).

52. Despite these complaints, which are simply a small sample, Philips has not taken any action to ensure that users of its Defective Breathing Machine have a replacement machine, an easily accessible repair, or monetary compensation to cover the cost of a replacement machine from another manufacturer.

11

53.     Additionally, due to the ongoing COVID-19 pandemic, there is a shortage of available replacement CPAP or BiPAP machines from other manufacturers, and thus Plaintiff and Class Members are left without any safe or cost-effective alternatives.

54.     Had Plaintiff and the Class Members known about the defects associated with the PE-PUR foam used in the Defective Breathing Machines and the serious health issues associated with those defects, they would not have purchased a Defective Breathing Machine or would have paid significantly less for that machine.

55.     Plaintiff and the Class have suffered economic injuries as a result of their purchase of the Defective Breathing Machines.

## V.     CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and two Classes defined as follows:

> **National Class**: All persons in the United States who purchased or leased a Defective Breathing Machine for personal use before June 14, 2021.

> **New York Subclass:** All persons in New York state who purchased or leased a Defective Breathing machine for personal use before June 14, 2021.

57.     The following people are excluded from the Classes: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, affiliated entities, and any entity in which Defendants or their parent has a controlling interest, and their current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of such excluded persons. Plaintiff reserves the right to revise the National Class and/or New York

Subclass definitions based upon information learned through discovery or as otherwise may be appropriate.

58.    <u>Numerosity</u>: Numerosity is satisfied because the National Class and New York Subclass are too numerous and dispersed for joinder of all members to be practicable. On information and belief, the National Class will be comprised of at least two million people, and the New York Subclass will consist of thousands, and perhaps, tens of thousands, of people. The precise size of the National Class and New York Subclass can be ascertained from Defendants' records. Accordingly, the disposition of the claims of all Class Members in a single action will provide substantial benefits to the parties and the Court.

59.    <u>Commonality</u>: Questions of law and fact that are common to Plaintiff and the Classes include, but are not limited to:

  a.  Whether the CPAP or BiPAP machines purchased or leased by Plaintiff and the class contained PE-PUR foam that has been linked to adverse health outcomes;

  b.  Whether the presence of the defective PE-PUR foam rendered the Defective Breathing Devices not merchantable;

  c.  Where Philips falsely, deceptively, or misleadingly represented that its Defective Breathing Devices were safe to use;

  d.  Whether these representations arose from a common course of conduct;

  e.  Whether Philips knew or should have known that these representations were false, deceptive, or misleading;

  f.  Whether a reasonable consumer would have likely been deceived by these representations;

  g.  Whether Philips owed a duty to disclose the defect to Plaintiff;

  h.  Whether Philips omitted the fact that the PE-PUR foam present in the Defective Breathing Devices posed a serious health risk to users of the devices from its marketing, advertising, labeling, and instruction materials;

      i.   Whether a reasonable consumer would consider the safety of their CPAP or BiPAP machine to be material;

      j.   Whether Philips was unjustly enriched by the sale or lease of the Defective Breathing Devices; and

      k.   Whether Philips breached its express warranties by selling the Defective Breathing Devices; and

      l.   Whether Philips violated New York Consumer Law for Deceptive Acts and Practices, NYGBL §§349, 350, by selling the Defective Breathing Devices while knowing that they were not of the quality or safety advertised.

60.   <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the National Class and New York Subclass members whom he seeks to represent.  Plaintiff, like all National and New York Subclass members, purchased a Defective Breathing Device and has not had his device repaired, replaced, or refunded by Philips.  In addition, Plaintiff's claims are based upon the same legal theories as the claims of the other Class and New York Subclass members.

61.   <u>Adequacy</u>:  Plaintiff is an adequate class representative because his interests do not conflict with the interests of the Classes he seeks to represent. Plaintiff's claims are common to all members of the Classes, and Plaintiff has a strong interest in vindicating the rights of absent Class Members. Plaintiff has retained counsel competent and experienced in complex class action litigation, and they intend to vigorously prosecute this action.

62.   <u>Ascertainability</u>:  Class Members can easily be identified by the objective criteria set forth in the Class definitions.

63.   <u>Injunctive and Declaratory Relief</u>:  This class action is also properly brought and should be maintained as a class action because Plaintiff seeks declaratory and/or injunctive relief on behalf of Class Members on grounds generally applicable to the Classes.  Certification is appropriate because Defendants have acted or refused to act in a manner that applies generally to the injunctive class.

64.    <u>Predominance</u>:  The common issues of law and fact identified above predominate over any other questions affecting only individual members of the Classes.  Class issues fully predominate over any individual issues.

65.    <u>Superiority</u>.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because: (a) the joinder of all individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources; (b) the individual claims of the Class members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions; (c) when Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases.

66.    This class action is properly brought and should be maintained as a class action because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## VI.    <u>TOLLING OF THE STATUTE OF LIMITATIONS</u>

67.    The applicable statutes of limitations for each Class Member have been tolled by Philips' fraudulent and deliberate concealment of the PE-PUR foam defect.  As a result of Philips' actions, Plaintiff and Class Members did not know, nor could they have known, that the PE-PUR foam was present in their devices or of the serious health risks posed by exposure to the PE-PUR foam until, at the earliest, June 14, 2021.

## VII.   CLAIMS FOR RELIEF

### COUNT ONE
### Unjust Enrichment
(On Behalf of Plaintiff and the National Class, or in the alternative, the New York Subclass)

68.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint.

69.     Plaintiff brings this claim for relief on behalf of himself and the proposed Class.

70.     In the alternative, Plaintiff brings this claim for relief on behalf of himself and the New York Subclass.

71.     Philips has been unjustly enriched by Plaintiff and Class Members paying a premium for Defective Breathing Devices from Philips that Plaintiff and Class Members would not have purchased but for Philips' misconduct alleged above.

72.     Plaintiff and Class Members unknowingly conferred a benefit on Philips of which Philips had knowledge, because Philips was aware of the defective nature of the PE-PUR foam insulation used in the Defective Breathing Devices, but failed to disclose this knowledge and instead misled Plaintiff and Class Members regarding the nature and quality of the devices while profiting from this deception.

73.     As a result, it would be inequitable, unconscionable, and unjust to permit Philips to retain the economic benefits it unfairly obtained from Plaintiff and Class Members.  These benefits include the premium price Plaintiff and the Class paid for the Defective Breathing Devices.

74.     Plaintiff and Class Members, having been damaged by Philips' conduct, are entitled to recover or recoup damages as a result of the unjust enrichment of Philips to their detriment.

**COUNT TWO**
**Breach of Express Warranty**
(On Behalf of Plaintiff and the Class or, in the alternative, the New York Subclass)

75.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint.

76.    Plaintiff brings this claim for relief on behalf of himself and the proposed class.

77.    In the alternative, Plaintiff brings this claim for relief on behalf of himself and the New York Subclass.

78.    Philips expressly warranted that its Defective Breathing Devices "shall be free from defects of workmanship and materials and will perform in accordance with the product specifications for a period of two (2) years from the date of sale."

79.    Philips breached this warranty by selling Defective Breathing Devices that, at the point of sale, contained latent defects in the form of the PE-PUR insulation foam that rendered the devices unsafe for normal use.

80.    Philips further breached this warranty by failing to provide appropriate relief to Plaintiff and Class Members once the defect became known.  In particular, Philips has not repaired or replaced the Defective Breathing Devices, nor has it refunded the cost of the devices to Plaintiff and Class Members.  Philips has also failed to provide customers with sufficient information about the recall, including how long it will take to repair the Defective Breathing Devices, the criteria for determining who will receive priority in repair or replacement, and what Plaintiff and Class Members who are unable to obtain a suitable alternative are supposed to do while they wait for Philips to repair or replace their devices.

81.    Philips' failure and/or refusal to replace or repair the Defective Breathing Devices has deprived Plaintiff and Class Members of the rights guaranteed to them under the express

warranty provided by Philips.  In addition, Philips' failure and/or refusal to refund the amounts paid by Plaintiff and Class Members for the Defective Breathing Devices is a further deprivation of their rights under the express warranty provided by Philips.

82.    As a direct and proximate result of Philips' breach of the express warranty, Plaintiff and Class Members have suffered damages in an amount to be proven at trial.

<u>**COUNT THREE**</u>
**Breach of Implied Warranty of Merchantability**
(On Behalf of Plaintiff and the Class or, in the alternative, the New York Subclass)

83.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint.

84.    Plaintiff brings this claim for relief on behalf of himself and the proposed Class.

85.    In the alternative, Plaintiff brings this claim for relief on behalf of himself and the New York Subclass.

86.    Philips extended an implied warranty to Plaintiff and Class Members that the Defective Breathing Devices were merchantable and fit for the ordinary purpose for which they were sold when it marketed and sold the Defective Breathing Devices.

87.    Plaintiff and Class Members purchased the Defective Breathing Devices for the purpose of treating sleep apnea, respiratory failure, or other similar health conditions.  Plaintiff and Class Members are entitled to the benefit of their bargain—a device that is safe to use for the treatment of these conditions.

88.    Philips breached its implied warranty of merchantability by offering for sale Defective Breathing Devices that are not fit for ordinary use and not of a merchantable quality.

89.     The PE-PUR foam used in the Defective Breathing Devices is latent and was present at the time of sale, thereby rendering the Defective Breathing Devices not merchantable at the time of sale.

90.     Had Plaintiff and the Class Members known about the defects inherent in the PE-PUR foam at the time of same, they would not have purchased the Defective Breathing Devices, or they would not have purchased the Defective Breathing Devices at the price charged by Philips.

91.     As a direct and proximate result of Philips' breach of the implied warranty of merchantability, Plaintiff and Class Members have been damaged in an amount to be proven at trial.

### COUNT FOUR
**Fraudulent Misrepresentation**
(On Behalf of Plaintiff and the Class or, in the alternative, the New York Subclass)

92.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint.

93.     Plaintiff brings this claim for relief on behalf of himself and the proposed Class.

94.     In the alternative, Plaintiff brings this claim for relief on behalf of himself and the New York Subclass.

95.     Philips misrepresented to Plaintiff and the Class that the Defective Breathing Devices were safe for ordinary use, when, in fact, the Defective Breathing Devices were unsafe for ordinary use because of the presence of PE-PUR foam, which has been proven to degrade and emit toxic chemicals and particles into the air path. Philips made these misrepresentations in advertising, packaging, and other written materials associated with the Defective Breathing Devices.

96.     Philips' misrepresentation about the safety of the Defective Breathing Devices was material to Plaintiff and Class Members, all of whom purchased the Defective Breathing Devices because they believed the Devices were safe for their intended use.  Philips' misrepresentations were intended to induce Plaintiff and Class Members to purchase the Defective Breathing Devices.

97.     Plaintiff and Class Members relied on Philips' misrepresentation that the Defective Breathing Devices were safe for ordinary use.  This reliance was reasonable and justifiable given the extent of Philips' misrepresentations.

98.     As a direct and proximate result of Philips' conduct, Plaintiff and the Class have sustained actual damages.  Had Plaintiff and Class Members known of the serious health risks associated with use of the Defective Breathing Devices, they would not have purchased them at all.  In addition, Plaintiff and Class Members would not have paid a premium for the Defective Breathing Devices, which did not conform to the promises made in the Devices' packaging, advertising, labels, and other written materials associated with the Defective Breathing Devices.

## COUNT FIVE
### Fraud by Omission
(On Behalf of Plaintiff and the Class or, in the alternative, the Florida Subclass)

99.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint.

100.     Plaintiff brings this claim for relief on behalf of himself and the proposed Class.

101.     In the alternative, Plaintiff brings this claim for relief on behalf of himself and the New York Subclass.

102.     Philips concealed from Plaintiff and Class Members the fact that the PE-PUR foam used in the Defective Breathing Devices poses a serious risk of harm to users.

103.    Philips had a duty to disclose the health dangers posed by the use of PE-PUR foam in the Defective Breathing Devices to Plaintiff and Class Members because Philips was aware of additional material facts regarding the Devices' safety that were not disclosed to Plaintiff or Class Members, and a reasonable consumer would have considered the non-disclosed facts material when deciding whether to purchase the Defective Breathing Devices.

104.    The non-disclosed risk of harm posed by the use of PE-PUR foam in the Defective Breathing Devices is essential information that, had it been disclosed, would have been essential to Plaintiff's and Class Members' decisions to purchase, or not purchase, the Defective Breathing Devices. Had Plaintiff and Class Members been informed that the Devices contained PE-PUR foam that had a tendency to degrade and/or emit harmful chemicals, thereby posing a serious risk of harm to users, they would not have purchased the Defective Breathing Devices, or would have paid less for the Devices.

105.    As a direct and proximate result of Philips' conduct, Plaintiff and Class Members have sustained actual damages. If Plaintiff and Class Members had known about the health risks associated with the use of the Defective Breathing Devices, they would not have purchased them at all. In addition, Plaintiff and Class Members would not have paid a premium for the Defective Breathing Devices, which did not conform to the promises Philips made in the Devices' packaging, advertising, labels, and associated written materials.

**COUNT SIX**
**Unfair and Deceptive Practices under Mass. Gen. Laws Ch. 93A[2]**
(On Behalf of Plaintiff and the Class)

106.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint.

107.    Plaintiff brings this claim for relief on behalf of himself and the proposed Class.

108.    Mass. Gen. Laws. Ch. 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." M.G.L. Ch. 93A, § 2.

109.    The manufacturing, sale, and marketing of the Defective Breathing Devices occurred in "trade" and "commerce."  M.G.L. Ch. 93A, § 1(b).

110.    Philips engaged in unfair and deceptive acts and practices when it breached its express warranty with Plaintiff and Class Members, as detailed above.

111.    Philips engaged in further unfair and deceptive acts and practices when it breached its implied warranty of merchantability with Plaintiff and Class Members, as detailed above.

112.    Philips engaged in further unfair and deceptive acts and practices when it fraudulently mispresented that its Defective Breathing Devices were safe for ordinary use, when, in fact, the devices contained PE-PUR foam that is known to degrade and can emit toxic chemicals that have serious adverse health consequences, rendering the Devices unsafe for ordinary use.

113.    Plaintiff and Class Members are entitled to bring suit under M.G.L. Chapter 93A because they have "engage[d] in the conduct of any trade or commerce" and they "suffer[ed] . . . loss of money or property" as a result of Philip's unfair and deceptive acts, which include

---

[2] Plaintiff has served a demand letter pursuant to M.G.L. Ch. 93A on Defendants and is awaiting a response.  30 days after service of the demand, Plaintiff will amend the Complaint to reflect Defendants' response.

nationwide misrepresentations about the Defective Breathing Devices that were made from Philips NA's headquarters in Massachusetts.

114.    As a direct and proximate result of Philips' conduct, Plaintiff and Class Members have sustained actual damages.  If Plaintiff and Class Members had known of the serious adverse health risks associated with use of the Defective Breathing Devices, they would not have purchased them at all.  In addition, Plaintiff and Class Members paid a premium for the Defective Breathing Devices, which did not confirm to the promises Philips made in the Devices' packaging, advertising, labels, and other written materials associated with the Devices.

### COUNT SEVEN
**Violation of New York Consumer Law for Deceptive Acts and Practices**
**N.Y. Gen. Bus. Law § 349**
(On Behalf of Plaintiff and the New York Subclass)

115.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint.

116.    Plaintiff brings this claim for relief on behalf of himself and the proposed New York Subclass.

117.    New York General Business Law ("NYGBL") § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in the state of New York.

118.    By reason of the conduct alleged herein, Defendant engaged in unlawful practices within the meaning of the NYGBL § 349. The conduct alleged herein is a "business practice" within the meaning of the NYGBL § 349, and the deception occurred in part within New York State.

119.    Philips engaged in unfair and deceptive acts and practices when it breached its express warranty with Plaintiff and Class members, as detailed above.

120.    Philips engaged in further unfair and deceptive acts and practices when it breached its implied warranty of merchantability with Plaintiff and Class members, as detailed above.

121.    Philips engaged in unfair and deceptive acts and practices when it fraudulently mispresented that its Defective Breathing Devices were safe for ordinary use, when, in fact, the devices contained PE-PUR foam that is known to degrade and can emit toxic chemicals that have serious adverse health consequences, rendering the Devices unsafe for ordinary use.

122.    Defendant's practices, acts, policies and course of conduct violate NYGBL § 349 in that, among other things, Defendant actively and knowingly misrepresented that its Defective Breathing Devices complied with its express and implied warranties and fraudulently misrepresented that its Defective Breathing Devices were safe for ordinary use when, in fact, they were not.

123.    This conduct constitutes an unconscionable commercial practice because Philips has, by the use of false statements and/or material omissions, failed to disclose that the Defective Breathing Devices are not safe for ordinary use due to the fact that they contain PE-PUR foam that is known to degrade and can emit toxic chemicals that have serious adverse health consequences.

124.    Members of the public, including Plaintiff and the New York Subclass, were deceived by and relied upon Defendant's affirmative misrepresentations and failures to disclose.

125.    Such acts and practices by Defendant are and were likely to mislead a reasonable consumer purchasing a Defective Breathing Device from Defendant. These acts and practices are material. The sales of the Defective Breathing Devices in New York through such means occurring in New York were consumer-oriented acts and thereby fall under NYGBL § 349.

126.    As a direct and proximate result of Philips' conduct, Plaintiff and New York Subclass members have sustained actual damages.  If Plaintiff and New York Subclass members

had known of the serious adverse health risks associated with use of the Defective Breathing Devices, they would not have purchased them at all. In addition, Plaintiff and New York Subclass members paid a premium for the Defective Breathing Devices, which did not confirm to the promises Philips made in the Devices' packaging, advertising, labels, and other written materials associated with the Devices.

127.    In addition to or in lieu of actual damages, because of the injury, Plaintiff and the New York Subclass members seek statutory damages for each injury and violation which has occurred.

**COUNT EIGHT**
**Violations of New York Consumer Law for Deceptive Acts and Practices**
**N.Y. Gen. Bus. Law § 350**
(On Behalf of Plaintiff and the New York Subclass)

128.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint.

129.    NYGBL § 350 prohibits false advertising in the conduct of any business, trade, or commerce, or in the furnishing of any service in the state of New York.

130.    By reason of the conduct alleged herein, Defendant engaged in unlawful practices within the meaning of the NYGBL § 350. The conduct alleged herein is a "business practice" within the meaning of the NYGBL § 350, and the false advertising occurred in part within New York State.

131.    The Defective Breathing Devices contain PE-PUR foam that is known to degrade and can emit toxic chemicals that have serious adverse health consequences, which Defendant did not disclose to Plaintiff and the New York Subclass. Defendant knew, or should have known, that, as a result, the Defective Breathing Devices were not safe for their intended use.

132.    Plaintiff and the New York Subclass members would not have purchased the Defective Breathing Devices had they known the truth about the degrading PE-PUR foam present in the Devices. There is no other use for Defendant's Defective Breathing Devices.

133.    Defendant violated NYGBL § 350 by failing to properly represent, both by affirmative conduct and by omission, the safety of the Defective Breathing Devices.

134.    If Defendant had not sold the Defective Breathing Devices in New York, Plaintiff and the other New York Subclass members would not have suffered damages caused by Defendant's sales.

135.    Defendant's practices, acts, policies and course of conduct violate NYGBL § 35o in that, among other things, Defendant actively and knowingly misrepresented or omitted disclosure of material information to Plaintiff and the New York Subclass members at the time they purchased the Defective Breathing Devices, including the fact that that Devices contain PE-PUR foam that is known to degrade and can emit toxic chemicals that have serious adverse health consequences.

136.    The aforementioned conduct constitutes an unconscionable commercial practice in that Defendant has, by the use of false statements and/or material omissions, failed to properly represent and/or concealed the true quality and safety of the Defective Breathing Devices.

137.    Members of the public, including Plaintiff and the members of the New York Subclass, were deceived by and relied upon Defendant's affirmative misrepresentations and failures to disclose.

138.    Such acts by Defendant are and were likely to mislead a reasonable consumer purchasing a breathing device from Defendant. Said acts and practices are material. The sales of Defendant's Defective Breathing Devices in New York through such means occurring in New

York were consumer-oriented acts and thereby fall under the New York consumer protection statute, NYGBL § 350.

139.    As a direct and proximate result of Philips' conduct, Plaintiff and New York Subclass members have sustained actual damages.  If Plaintiff and New York Subclass members had known of the serious adverse health risks associated with use of the Defective Breathing Devices, they would not have purchased them at all.  In addition, Plaintiff and New York Subclass members paid a premium for the Defective Breathing Devices, which did not confirm to the promises Philips made in the Devices' packaging, advertising, labels, and other written materials associated with the Devices.

140.    In addition to or in lieu of actual damages, because of the injury, Plaintiff and the New York Subclass members seek statutory damages for each injury and violation which has occurred.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the National Class and New York Subclass, requests that the Court:

a.    Certify this case as a class action on behalf of the Classes defined above under Federal Rules of Civil Procedure 23(a), 23(b)(2), and (b)(3), appoint Plaintiff as representative of the National Class and New York Subclass, and appoint the undersigned as Class counsel;

b.    Award declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and members of the Classes;

c.    Award injunctive relief as is necessary to protect the interests of Plaintiff and members of the Classes;

d.    Enter an Order enjoining Defendants from further deceptive and unfair practices;

e.      Enter an award in favor of Plaintiff and Class Members that includes

compensatory, exemplary, punitive damages, and statutory damages, including

pre- and post-judgment interest thereon, in an amount to be proven at trial;

f.      Award restitution and damages to Plaintiff and Class Members in an amount to be

determined at trial;

g.      Enter an award of reasonable attorneys' fees and costs, as allowed by law;

h.      Enter an award of pre-judgment and post-judgment interest, as provided by law;

i.      Grant Plaintiff and Classes leave to amend this complaint to conform to the

evidence produced at trial; and

j.      Grant such other or further relief as may be appropriate under the circumstances.

## IX.    **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Dated: September 27, 2021


By: */s/ John F. Dew*
John F. Dew (BBO# 688467)
**COHEN KINNE VALICENTI & COOK LLP**
28 North Street, 3rd Floor
Pittsfield, Massachusetts 01201
Tel:  (413) 443-9399
Email: jdew@cohenkinne.com

By:  */s/ David Boies*
David Boies (*pro hac vice forthcoming*)
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, New York 10504
Tel: (914) 749-8200
Email: dboies@bsfllp.com

George F. Carpinello
(*pro hac vice forthcoming*)
Jenna C. Smith (*pro hac vice forthcoming*)
**BOIES SCHILLER FLEXNER LLP**
30 South Pearl Street, 11th Floor
Albany, NY 12207
Tel: (518) 434-0600
Fax: (518) 434-0665
Email: gcarpinello@bsfllp.com
            jsmith@bsfllp.com

Samuel J. Strauss
(*pro hac vice forthcoming*)
Raina C. Borrelli (*pro hac vice forthcoming*)
**TURKE & STRAUSS LLP**
613 Williamson Street Suite 201
Madison, WI 53703
Tel: (608) 237-1775
Email: sam@turkestrauss.com
       raina@turkestrauss.com

*Attorneys for Plaintiff*